UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dana Hanson,
    Claimant

    v.                                   Civil No. 07-cv-106-SM
                                        Opinion No. 2008 DNH 114

Michael J. Astrue, Commissioner,
Social Security Administration
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Dana Hanson moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). The Commissioner objects and moves for an order affirming his decision.

**Factual Background**

I.    Procedural History.

On August 27, 2004, claimant filed an application for disability insurance benefits under Title II of the Act, alleging that he had been unable to work since May 30, 2000, due to shoulder pain, numbness in some of his fingers, and anxiety. His

application was denied and he requested a hearing before an Administrative Law Judge ("ALJ").

In August of 2006, claimant, his attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  On September 18, 2006, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of his prior work as a manager of a truck stop.  Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the expiration of his insured status on December 31, 2003.

Claimant then sought review of the ALJ's decision by the Appeals Council, which denied his request.  Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8).  In response, the Commissioner filed a "Motion

for Order Affirming the Decision of the Commissioner" (document no. 10).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1]  <u>See</u> 42 U.S.C.

---

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  <u>Consolo v. Federal</u>

§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222-23 (1st Cir. 1981).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference

---

Maritime Comm'n., 383 U.S. 607, 620 (1966).

to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by

the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

>    (1)   whether the claimant is engaged in substantial gainful activity;
>
>    (2)   whether the claimant has a severe impairment;
>
>    (3)   whether the impairment meets or equals a listed impairment;
>
>    (4)   whether the impairment prevents the claimant from performing past relevant work; and
>
>    (5)   whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I.   Background – The ALJ's Findings.

In concluding that Mr. Hanson was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since May 30, 2000.  Next, he concluded that claimant suffers from pain, particularly in his left shoulder and right hip, as a result of injuries he sustained in a work-related accident in May of 2000.  Administrative Record ("Admin. Rec.") at 21-22.  Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 22.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of light and sedentary work.[2]  He noted, however, that claimant's

---

[2]   "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental

RFC was limited by his inability to lift more than 20 pounds, perform tasks requiring hyper-flexing, telescoping, or extending the neck, and work overhead or at heights. Admin. Rec. at 22. The ALJ also concluded that claimant could not return to his most recent job as a forklift operator. Despite those restrictions, however, the ALJ concluded that claimant retained the ability to perform the physical and mental tasks associated with his prior job as a truck stop manager – at least as of the date his insured status expired. Admin. Rec. at 23. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through his date last insured (December 31, 2003).

II.  Claimant's Ability to Perform His Prior Work.

In support of his assertion that the ALJ's decision is not supported by substantial evidence, claimant says the ALJ: failed to make sufficient specific findings of fact regarding the physical demands of claimant's past relevant work; neglected to

---

activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

fully evaluate claimant's mental impairment; and failed to point to adequate factual support in the record for his determination of claimant's residual functional capacity.  The court disagrees.

In his motion to reverse the decision of the Commissioner, claimant points to various aspects of the ALJ's decision and/or analysis he feels were inadequate.  He does not, however, provide any developed argument, based upon the record, that he is actually disabled.  He is, of course, correct in pointing out that the hearing process is intended to be non-adversarial and that the ALJ has an obligation to fully develop the record.  But, at the same time, at step four of the sequential evaluation process – the step at which the ALJ resolved claimant's application – the claimant bears the burden of showing that he suffers from a disabling impairment (or combination of impairments) that prevents him from engaging in prior forms of employment. See, e.g., Bowen, 482 U.S. at 146 n.5 ("The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work."); Santiago, 944 F.2d at 5 ("not only must the claimant lay the foundation as to what activities her former work entailed, but she must point out

(unless obvious) – so as to put in issue – how her functional incapacity renders her unable to perform her former usual work."). See also 42 U.S.C. § 423(d)(5)(A).

Here, even reading the record evidence in the light most favorable to claimant, it simply does not support the conclusion that he was disabled at any time prior to the expiration of his insured status. Stated somewhat differently, the ALJ's decision, despite its alleged shortcomings, is supported by substantial record evidence.

As a result of his workplace accident, claimant suffered a right vertebral artery dissection, fractures to his left clavicle, right sacroiliac joint, right pelvis, and cervical fractures at C2 and C7. There is no doubt that his injuries were severe. He was hospitalized for eight days and then transferred to a rehabilitation facility. By the fall of 2000, however, claimant had made a substantial recovery. During that recovery process, his various treating physicians reported that:

> He was "doing extremely well," had "full range of motion about his left shoulder," and "may resume light duties." Admin. Rec. at 224 (Dr. Wallach, orthopaedic evaluation, July 25, 2000);

"Today in clinic, he does have one complaint, and that is that his right first finger and the medial aspect of his right second finger on occasion are numb. Otherwise, he has no complaints, including headache, nausea, vomiting, neck pain, or dizziness," and "his motor strength is 5/5 in all extremities." Admin. Rec. at 144 (Dr. Sumas, neurosurgeon, July 25, 2000);

Claimant reported some mild anxiety, but was "improving on the BuSpar without side effects" and "he seems less anxious, in general today. I think we're seeing improvement." Admin. Rec. at 192 (Dr. Brock, August 10, 2000).

Claimant "reports that he is doing well, using his cane for ambulation, but not needing it for short trips. He reports that he really has very minimal-to-no pain in his right pelvis except with certain motions. His left shoulder is not bothering him at all." Admin. Rec. at 143 (Dr. Wallach, August 29, 2000).

Claimant "does have some mild pain with internal rotation of the bilateral hips but otherwise has good range of motion and no pain with external rotation, full flexion or extension. He is able to do a single-leg stance bilaterally, able to walk on his toes and heels, and able to squat and rise from a squatting position without difficulty." Id.

Claimant "can return to activity as tolerated and return to work on medium duty." Id.

By September of 2000, the right vertebral artery dissection had healed and it was reported that claimant's "coordination is good and symmetric. There is no pronar drift. Extremity strength is full. His gait, including tandem walking, is normal and steady." Admin. Rec. 142. (Dr. Cockroft, September 5, 2000).

And, by October of 2000, it was reported that claimant "demonstrates 5/5 strength in abduction and has no instability of his left clavicle. He has some mild tenderness over his prominent callus. He is able to squat and has no tenderness in his pelvis. His gait is

without a limp."  Admin. Rec. 138.  (Dr. Wallach, October 6, 2000).

"Impression: A man who has healed his fractures and can return to employment as far as I am concerned as soon as possible [once cleared by neurosurgery to return to work]."  Id.

By the summer of 2001, about a year after his accident, claimant's most serious complaints appear to have related to the continued numbness in two fingers and some mild anxiety that was well-controlled with medication.  In July of 2001, an MRI revealed that he had some mild degenerative disc disease, which restricted him from performing any heavy lifting and overhead reaching.  Dr. Powers, Chief of the Division of Neurosurgery at Hershey Medical Center, stated that:

> It is my recommendation that this patient be allowed to return to sedentary or light duty activities in the future.  He will not improve to the point where he can do more work than that.  He should be limited to 20 pounds of lifting or carrying and should not work overhead at all and should not work at heights, as I stated above.  He may drive a vehicle but should not be involved in driving any trucks or big rigs.  He should definitely not drive a forklift, since he is, as has already been shown, prone to injury in that setting. I'm releasing him from our care.

Admin. Rec. at 133.  Finally, in September of 2001, Dr. Brock's notes reveal that claimant reported experiencing some mild depression.  But, claimant stated that he was coping with it and

did not wish to take any medication.  Admin. Rec. at 188.  See also Admin. Rec. at 273-74 (claimant acknowledged that, after taking medication for his anxiety for about six months, he stopped because he believed he no longer needed it).  There are no other significant medical reports or records prior to claimant's date last insured.

In April of 2005, Dr. Barton Nault, reviewed all of claimant's medical records and prepared an assessment of his residual functional capacity.  Admin. Rec. at 197-203.  Based on that review, Dr. Nault concluded that, "within 12 months of [claimant's accident] and prior to his [date last insured], claimant had recovered well from his injuries and it would appear that he was capable of doing light work."  Admin. Rec. at 203.  With regard to exertional limitations, Dr. Nault opined that claimant could: occasionally lift up to 20 pounds, frequently lift up to 10 pounds; stand and/or walk for about six hours in an eight-hour day; and sit (with normal breaks) for about six hours during an eight-hour day.  Admin. Rec. at 198.  Finally, Dr. Nault opined that claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl.  Admin. Rec. at 199.

Little, if any, evidence in the record contradicts those opinions.  None of claimant's treating physicians opined that he was disabled; at most, some of them thought he could return to work with only minor restrictions (e.g., no heavy lifting and no working overhead).  And, while claimant points to his anxiety as being either disabling or contributing to his disability, the record (at least through his date last insured) provides little support.  For example, by June of 2001, claimant had stopped taking any medications for anxiety and/or depression.  Admin. Rec. at 188.  Three months later, in a follow-up visit with Dr. Brock, claimant reported that, while he had some mild depression, he was coping with it well and declined any medication for it. Id.  Subsequently, in April of 2005, more than a year after claimant's insured status expired, a psychologist, Dr. Michael Schneider, reviewed claimant's medical records and completed a "Psychiatric Review Technique" form.  Dr. Schneider concluded that there was insufficient evidence in the record to determine whether claimant suffered from a psychiatric condition.  Admin. Rec. at 206.

The balance of the medical records submitted by claimant (including psychological records) covered the period of time between August, 2006 and January, 2007 – well after his insured

15

status had lapsed.  Additionally, those materials were not submitted to the ALJ and, consequently, he did not have those materials before him when he rendered his decision.  Rather, those materials were provided to the Appeals Council, as a supplement to claimant's medical history.

Importantly, however, claimant does not challenge the Appeals Council's refusal to review the ALJ's decision.  That is, he does not assert that the Appeals Council's decision was based upon an "egregiously mistaken ground."  Mills v. Apfel, 244 F.3d 1, 5, (1st Cir. 2001).  Instead, claimant challenges only the ALJ's decision to deny his application for disability insurance benefits, which was, of course, based solely on the medical records that existed at the time.  Consequently, the ALJ's decision must be measured against the record that was actually before him when he rendered it.  See Mills 244 F.3d at 5 ("[W]e may review the ALJ decision solely on the evidence presented to the ALJ.").  Finally, it probably bears noting that because claimant's insured status had expired approximately two and one-half years before the ALJ rendered his decision, there was little the ALJ could have done to "further develop" the record before him – all of claimant's relevant medical records prepared during that period were already before the ALJ.

## Conclusion

While there is little doubt that claimant continues to suffer pain and adverse effects – both physical and emotional – from his accident, the record evidence simply does not support his assertion that he was, as of his date last insured, disabled from performing his past relevant work as a store manager. ALJs have heavy workloads and while, in a less demanding time, the ALJ's decision might have been more detailed and might have provided a more substantial discussion of the medical records and the extent of claimant's limitations, the critical question presented to this court remains the same: whether the ALJ's adverse disability determination is supported by substantial evidence in the record. It plainly is.

The ALJ's assessment of claimant's RFC, Admin. Rec. at 22-23, is entirely consistent with, and well supported by, the opinions rendered by claimant's treating and examining physicians, as well as the Functional Capacity Assessment prepared by Dr. Nault. That assessment of claimant's RFC is also entirely consistent with claimant's description of his prior work as a store manager. See Admin. Rec. at 68. See also Dictionary of Occupational Titles, 185.167-046, "Manager, Retail Store," Admin. Rec. at 87. Finally, the record evidence does not support

claimant's assertion that, prior to his date last insured, he suffered from an anxiety disorder of the sort or intensity that might reasonably be expected to impact his ability to work.

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the expiration of his insured status. For the foregoing reasons, as well as those set forth in the Commissioner's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied, and the Commissioner's motion to affirm his decision (document no. 10) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 6, 2008

cc: Seth R. Aframe, Esq.
    Raymond J. Kelly, Esq.